UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x

ANWYN GOLDBERG and SOLOMON WATKINS

                      Plaintiffs,

    -against-

THE CITY OF NEW YORK and OFFICER RYAN
MCLASKY,

                      Defendants.

MEMORANDUM DECISION
AND ORDER

19 Civ. 4241 (GBD) (KHP)

------------------------------------- x

GEORGE B. DANIELS, United States District Judge:

Plaintiffs Anwyn Goldberg and Solomon Watkins bring this action pursuant to 42 U.S.C § 1983, 42 U.S.C § 1988, and New York State law against Defendants City of New York (the "City"), New York City Police Department Officer Ryan Mclasky ("Mclasky"), and a number of unknown NYPD officers. Plaintiffs allege that Defendants violated their constitutional rights in connection with their arrest on February 12, 2018 and subsequent prosecution. (*See* Complaint, ECF No. 1, ¶ 2.) Specifically, Plaintiffs allege that Defendants unlawfully arrested Plaintiffs without probable cause, and maliciously prosecuted Plaintiffs based on fabricated evidence. (*Id.* ¶ 43, 45, 50.) Plaintiffs Complaint asserted claims for false arrest and false imprisonment, assault and battery, excessive force, malicious prosecution, failure to intervene, malicious abuse of process, negligent hiring and supervision, and municipal liability. (*Id.* ¶¶ 71-142.)

Before this Court are Defendant's motions for summary judgment, and Plaintiff's cross motion for partial summary judgment. (*See* Defendant's Notice of Motion for Summary Judgment, ECF No. 48, 1; Plaintiff's Notice of Cross-Motion for Summary Judgment, ECF No. 58, 1.) In the course of briefing and oral argument on the subject motions, Plaintiffs voluntarily dismissed

their claim for municipal liability and Plaintiff Goldberg dismissed her claim for excessive force. (Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Summ, J. and Cross-Mot. for Summ. J. ("Pls.' SJ Brief."), ECF No. 60.)

Defendant's motion for summary judgment dismissing Plaintiffs' remaining claims is GRANTED.[1] Plaintiff's cross-motion for partial summary judgment in their favor on their claims for false arrest, false imprisonment, malicious prosecution, is DENIED.

## I. FACTUAL BACKGROUND

On February 12, 2018, Defendant Mclasky was on duty as a member of the New York City Police Department's Vandals Squad and assigned to patrol Manhattan South. (Defs.' Rule 56.1 Statement ("Defs.' 56.1 Stmt."), ECF No. 40, at ¶ 117.) Officer Steven Esposito ("Esposito") was Mclasky's partner on the night in question. (Defs.' 56.1 Stmt. at 121.) Neither officer was wearing a uniform. (*Id.* at 19.) Esposito was wearing a police shield his around his neck. (*Id.* at 91.) Mclasky did not have a visible police shield, and his badge was under his clothing. (*Id.* at 89.)

At approximately 9:15 p.m., Mclasky observed Plaintiffs, Keiffer Braisted, and two others walking down Canal Street. (Transcript of Deposition of Ryan Mclasky ("Mclasky Dep."), ECF No. 50-10, at 81:16-24.) Plaintiffs, Braisted, and an individual named Bibby Walsh had travelled from New Jersey to Manhattan. (Defs.' 56.1 Stmt at ¶ 8.) Plaintiffs knew Braisted from the University; Walsh was a friend of Braisted. (*Id.* at ¶ 4, 7.) When the party arrived at the Canal Street station, a fifth unidentified individual joined the group. (*Id.* at ¶ 10.) The group walked from the Canal street station towards the vicinity of 305 Church Street. (*Id.* at ¶ 13.)

---

[1] Following oral argument, Plaintiffs continue to assert claims for false arrest and false imprisonment, malicious prosecution, malicious abuse of process, and failure to intervene. Plaintiff Watkins also continues to assert a claim for excessive force.

At approximately 9:30 p.m., the group stopped in front of a Bank of America. (Defs.' 56.1 Stmt. at ¶ 119; Transcript of Deposition of Keiffer Braisted ("Braisted Dep."), ECF No. 50-9, at 63:23-64:6.) Mclasky observed Braisted take out a graffiti marker and draw on the side of the Bank of America building.[2] (Mclasky Dep. at 81:16-24.) While Braisted committed the graffiti, Mclasky observed Plaintiffs "shielding [Braisted] from view" and "looking up and down the street as a lookout." (*Id.*) Once Braisted had completed the graffiti, the entire group continued walking down Canal street. (Defs.' 56.1 Stmt. at ¶ 120.) Walsh and the other unknown male walked in front of the group, Braisted walked in the middle, and Plaintiffs walked side by side, at the rear of the group. (Mclasky Dep. at 110:8-16.)

A few minutes later, Mclasky approached the group of five individuals a short distance from where the graffiti took place. (Braisted Dep. at 70:11-17.) Mclasky testified that he announced himself as a police officer, though this is disputed by Plaintiffs and Braisted. (*Id.* at 71:13-20; Defs.' 56.1 Stmt. at ¶¶ 19 82). Braisted testified that he heard Mclasky say "freeze, stop." (Braisted at 71:13-20.) After Mclasky and Esposito approached the group, Braisted ran to the nearest train station and left the scene. (*Id.* at 75: 8-21.) Walsh and the unnamed individual also fled. (Mclasky Dep. at 126:4-25.)

After the others had fled, Mclasky attempted to apprehend Plaintiff by grabbing his elbow. (Transcript of Deposition of Solomon Watkins Dep. ("Watkins Dep."), ECF No. 50-4, at 86:87:3.) Mclasky testified that both Plaintiffs took out cans of pepper spray and sprayed it into Mclasky's

---

[2] Braisted testified that after the group arrived at Canal Street, the four of them walked to the paint store where Braisted purchased the black marker used to vandalize the Bank of America building. (Braisted 60:2-13.) Braisted also testified that Goldberg and Solomon were present when he made his purchase, which included several cans of spray paint along with the black marker. (*Id.* at 60:14-24.)

3

had pushed Watkins to the ground that she sprayed the mace in his face, (Transcript of Deposition of Anwyn Goldberg ("Goldberg Dep."), ECF No. 50-5, at 133:21-24). Mclasky grabbed Watkin' elbow. (Watkins Dep. 89:3-16, 90:22-91:1.) Watkins pulled his arm away until he was able to free himself from Mclasky's grasp.   At that point, Mclasky pushed Plaintiff forward with his weight until both individuals fell to the ground with Plaintiff hitting his head, torso, elbows, and knees on the ground and Mclasky landing on top of Plaintiff Watkins. (Watkins Dep. 91:15-91:23, 92:14-93:11.) When on the ground, Plaintiff continued to struggle to get away by "moving backwards away from McClasky and trying to get his hands underneath himself to push himself up. (*Id.* at 93:11-10.) At this point, Mclasky put his weight on top of Plaintiff and held him down. (*Id.* at 96:20-97:6.) After approximately two to three minutes of struggling, Mclasky was able to place Plaintiff in handcuffs. (Watkins Dep. at 99:5-13.) During the struggle, Mclasky did not punch or kick Plaintiff. (*Id.* at 101:23-104:8.) Plaintiff testified that the handcuffs were "pretty tight" and that he informed an officer other than Mclasky of this fact as he was placed in the police car. (Watkins Dep at 105:11-106:15.) Plaintiff did not inform Mclasky at the time he was handcuffed because he did not realize they were too tight until he had calmed down after the arrest. (*Id.*) Plaintiff did not observe any injuries on his wrists as a result of being handcuffed once they were taken off at the Canal Street station. (Watkins Dep. at 118:23-119:1)

Esposito effected Goldberg's arrest. (Defs.' 56.1 Stmt. at ¶ 92.) After Plaintiff Watkins was handcuffed, he was pushed towards a nearby brick wall. (Watkins Dep. at 108:10-18.) Plaintiff testified that he was pushed with too much force and his lower middle lip hit the wall causing it to split open ." (Watkins Dep. at 109:10-110:9.)

Plaintiffs were then transported to the Canal street precinct and put into a jail cell. Once in the jail cell, they were visited by EMS workers. (Watkins Dep. at 111:6-14.) Plaintiff Watkins'

Medical Report reflects that Plaintiff suffered an abrasion to his right knee and hands, and that he was treated for "minor scratches on knees," "scratches on fingers," and given an asthma pump. (Declaration of Morgann McKinney in Support of Motion for Summary Judgment "(McK Decl."), ECF No. 50, Ex. H (Medical Treatment of Prisoner Form).)

Plaintiffs were both detained at the precinct overnight. (56.1 Stmt. ¶¶ 51, 105.) The next day, they were transported to their arraignment where they were represented by an attorney and the criminal charges explained to them. (*Id.*) Plaintiffs were both charged for assault in the second degree, obstructing governmental administration in the second degree, resisting arrest, and criminal mischief in the fourth degree. (*Id.* at ¶¶ 52, 106.) Plaintiffs' charges were dismissed on September 5, 2018 pursuant to Speedy Trial provisions. (56.1 Stmt. at ¶¶ 52, 106.). Plaintiff filed this action on May 9, 2019.

## II.   LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 248.) For a genuine dispute regarding a material fact to warrant a jury trial, there must be sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. However, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and

a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

"[T]he court is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. County of Oneida, N.Y.*, 375F.3d 206, 219 (2d Cir. 2004). However, a court is not required to draw any inference that is "blatantly contradicted by the record, so that no reasonable jury could believe it . . . for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 US 372, 380. To defeat a motion for summary judgment, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).

## III. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT

### A. There was Probable Cause to Arrest Plaintiffs

Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003). To assess whether probable cause exists, the Court "examine[s] the events leading up to the arrest and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotation marks omitted). Probable cause "is not a high bar" — it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, (2001).

Defendant argues that Mclasky had probable cause to arrest Plaintiffs based on Plaintiffs' behavior and proximity to Braisted's while he committed graffiti. (Defs.' Brief at 6-8.) Defendants also argue that Mclasky had probable cause to arrest Plaintiffs because Watkins resisted arrest, and Goldberg sprayed pepper spray into Mclasky's face while he was subduing Watkins. (*Id.* at 10.) In opposition, Plaintiffs assert they did not assist Braisted in drawing the graffiti, and the fact that they were near him while he committed the crime is insufficient to establish probable cause. (Pls.' SJ Brief at 10-12.) Plaintiffs also argue they did not know Mclasky was a police officer, therefore they did not have the requisite intent to resist arrest or assault a police officer. (*Id.* at 12-13.)

Based on Mclasky's experience and the historical facts known to Mclasky at the time of Plaintiffs' arrest, it was objectively reasonable for him to have concluded that Plaintiffs had assisted Braisted in committing vandalism. Mclasky testified that prior to arresting Plaintiffs, he observed Plaintiffs walking with Keiffer Braisted and two other individuals down canal. (Mclasky Dep. at 67:22-25 - 68:1-14; and 71:12-25). Mclasky also observed that when Braisted stopped in front of a building to commit graffiti, Plaintiffs stopped with him. (*Id.* at 81:7-24; and 82:6-17.) Mclasky also observed Plaintiffs looking up and down the street while standing directly behind Braisted as he completed the graffiti. (*Id.* at 81:7-24; 82:6-17; and 83 7-21.) Once Braisted finished the drawing, the entire group, including Plaintiffs, continued their walk together down Canal Street. (*Id.* at 91:6-13 a1nd 747:25-108:6-11.) These facts are sufficient to support a reasonable belief that Plaintiffs were accomplices to Braisted's vandalism. *See People v. Gonzalez*, 166 A.D.3d 550 (1st Dept 2018) (conviction for acting as lookout affirmed where witness described "repeated pattern of movements by defendant" which was intended to aid another individual who was breaking and entering); *People v. Middleton*, 151 A.D.3d 491, 491

7

(1st Dept 2017) (probable cause to arrest defendant existed where defendants "defendant stood close by, engaging in behavior indicative of being a lookout while also positioning himself as to conceal the co-defendant's actions").

There was also probable cause to arrest Plaintiffs when Watkins attempted to evade arrest and Goldberg sprayed pepper spray into Mclasky's face. Plaintiffs argue that they did not resist arrest or assault a police officer because they did not know that Mclasky, who was dressed in plainclothes, was a police officer. (Pls.' SJ Brief at 23-4.) However, Plaintiffs' subjective understanding is irrelevant to the issue of whether Mclasky had reason to believe, based on the facts known at the time, that Watkins and Goldberg had engaged in criminal activity. *D.C. v. Wesby*, 138 S. Ct. at 586 (arrest based on probable cause where facts supported the officers "entirely reasonable inference" that defendants were engaging in illegal activity).

As Defendants have presented facts from which a reasonable objective police officer could reasonably infer that a crime had taken place, Plaintiff's arrest on February 12, 2018 was pursuant to probable cause.

### B. Plaintiffs' Claim for False Arrest and False Imprisonment Fail

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, ... is substantially the same as a claim for false arrest [and imprisonment] under New York law." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *see also Perez v. Duran,* 962 F. Supp. 2d 533, 538 (S.D.N.Y. 2013). Both claims require a showing that, *inter alia,* the defendant intentionally confined the plaintiff without consent or justification. *Pelayo v. Port Auth.,* 893 F. Supp. 2d 632, 639 (S.D.N.Y. 2012). In the absence of an arrest warrant, "the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano,* 604 F.3d 732, 751 (2d Cir. 2010).

8

Regardless of whether the action is brought under state law or § 1983, the existence of probable cause to arrest constitutes sufficient justification and is thus a complete defense to liability. *Weyant,* 101 F.3d at 852 (citations omitted).

Plaintiffs argues that their arrest and detention overnight was unlawful because "defendants' exclusive reliance upon plaintiffs' being observed in proximity to Mr. Braisted while he committed graffiti" is insufficient to show probable cause. (Pls.' SJ Brief at 10-11.) While Plaintiffs are correct that as a matter of law, proximity to criminal activity is insufficient to establish probable cause absent particularized suspicion as to a specific individual, Defendants have presented evidence that they had such suspicion. (*See Supra* III.A). As such, this case is distinguishable from *Ybarra v. Illinois*, where the individual searched "made no gestures" and "gave no indication" that he was engaged in criminal activity. 444 U.S. 85, 91 (1979)

Accordingly, Plaintiffs' claim for false arrest and false imprisonment fails.

### C. Plaintiffs' Claim for Malicious Prosecution Fails

"[T]o prevail on a Section 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York,* 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). A plaintiff seeking to establish a claim for malicious prosecution under New York law must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 161 (citations omitted). Malice can be shown either through evidence that the defendant "commenced the criminal proceeding due to a wrong or improper motive" or it may "be inferred from the lack of probable cause." *Lowth v. Town of Cheektowaga,* 82 F.3d 563,

9

573 (2d Cir. 1996) (citation omitted). As with claims for false arrest, the existence of probable cause is a complete defense to a claim for malicious prosecution. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

Plaintiffs argue that they were maliciously prosecuted as a matter of law because there was no probable cause to arrest Plaintiffs, therefore there was no basis to prosecute them. As Defendants have established that there was probable cause to arrest Plaintiffs, (*supra* III.A.), Plaintiffs are unable to establish a claim for malicious prosecution. *Savino*, 331 F.3d 63, 72 (2d Cir. 2003).

Accordingly, Plaintiffs' claim for false arrest and false imprisonment fail.

**D. Plaintiffs' Claim for Malicious Abuse of Process Fails**

"'In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Savino v. City of New York*, 331 F.3d 63, 69-70 (2d Cir. 2003) (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). "[T]o state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77. Additionally, "merely alleging that a defendant lacked probable cause is not enough to satisfy the third prong of an abuse of prosecution claim." *Blue v. City of New York*, 16-CV-9990 (VSB), 2018 WL 2561023, at *8 (S.D.N.Y. June 4, 2018).

Plaintiffs argues that Mclasky arrested and maliciously prosecuted them "in absence of probable cause because of his impermissible desire to apply plaintiffs' arrests and pending

10

prosecutions as leverage to compel his true suspect, Mr. Braisted, to turn himself in." (Pls. Opp. at 435.) However, Plaintiffs fail to present any evidence that would allow a reasonable inference that Mclasky was acting with any motive other than that of fulfilling his duties as a member of the NY Vandals Taskforce. Therefore Plaintiffs have not established that Mclasky arrested Plaintiffs "in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 69-70; *see also Dash v. Montas*, 17-CV-515 (PKC) (RER), 2020 WL 1550708, at *11 (E.D.N.Y. Mar. 31, 2020) (granting summary judgment where plaintiff failed to present evidence in support of claim that "that Defendant [] harbored [] personal animus toward Plaintiff or acted with some other collateral objective—*i.e.*, one not related to law enforcement").

Accordingly, Plaintiffs claim for malicious abuse of process fails.

### E. Plaintiffs' Claim for Failure to Intervene Fails

"An officer who fails to intervene is liable if '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" *Aguirre v. City of New York*, 15-CV-6043 (PKC), 2017 WL 4236552, at *12 (E.D.N.Y. Sept. 22, 2017) (citing *Cook v. City of N.Y.*, No. 15-cv-6559, 243 F.Supp.3d 332, 2017 WL 1434493, at *11 (E.D.N.Y. Mar. 20, 2017)). Where plaintiff's claim for excessive force is dismissed, the derivative claim for failure to intervene must also be dismissed. *See Coleman v. City of New York*, 07 CIV. 1051 (CM), 2010 WL 571986, at *5 (S.D.N.Y. Feb. 2, 2010) (granting summary judgment where "injury to plaintiff was transitory and de minimis").

Plaintiff has failed to identify any defendant who is liable for failing to intervene in Plaintiffs' arrest. Accordingly, their claim fails as a matter of law. *Clay v. Cnty. of Clinton*, No. 8:10-cv-00239, 2012 WL 4485952, at *14 (N.D.N.Y. Sep. 27, 2012) (dismiss claim where plaintiff

11

"fail[ed] to distinguish which . . . Defendant was responsible for actually violating Plaintiff's constitutional rights and which, if any, Defendant failed to intervene to prevent such violations from occurring"). At oral argument, Plaintiffs stated that their claim for failure to intervene is Officer Esposito. However, this claim too fails as a matter of law since Plaintiffs cannot proceed against the Defendant NYC on theories of primary liability for Mclasky's harms, and simultaneously on a theory of secondary liability for Esposito's inaction. Accordingly, Plaintiffs' claim for failure to intervene fails as a matter of law.

### F. Plaintiff Watkins' Claim for Excessive Force Fails on the Merits

Defendants argue that Watkins' excessive force claim fails as a matter of law because the force used by Mclasky to effectuate Watkins' arrest was reasonable in light of the fact that Watkins resisted arrest as soon as Mclasky took hold of him and Goldberg sprayed mace directly at Mclasky's face. (Defs.' Brief at 21.) Defendants also argue that the force used against Watkins does not rise to a constitutional violation as a matter of law because the injuries Watkins' alleges are de minimis. (*Id.*) In opposition, Plaintiffs argue that Watkins only struggled against Mclasky because he was not aware that Mclasky was a police officer and that Mclasky's arrest was excessively violent. (Pls' Brief at 26.) At oral argument, Plaintiffs also argue Watkins was injured when he was pushed with excessive force into a brick wall.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor.* 490 U.S. 386, 395 (1989)). The inquiry is necessarily fact specific and requires courts to balance a variety of factors, including: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and

(3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Graham v. City of New York.* 928 F. Supp. 2d 610, 617-18 (E.D.N.Y. 2013) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)). As "[o]fficers are entitled to use some degree of force when restraining a suspect during an arrest," *Faruki v. City of N.Y.*, 517 Fed. App'x 1, 2 (2d Cir. 2013), the question becomes whether, under the totality of circumstances, defendants "used more force than was necessary to subdue [an individual]," *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003). To avoid summary judgment, plaintiff must present sufficient evidence establishing that "the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." *Washpon v. Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir.1999)). *De minimis* force will rarely give rise to a constitutional violation, and a *de minimis* injury "can serve as conclusive evidence that *de minimis* force was used." *Washpon*, 561 F. Supp. 2d at 406.

Viewing the facts in the light most favorable to the plaintiff, Mclasky's use of force was reasonable in light of Plaintiff's Watkins resistance, and Plaintiff's *de minimis* injuries are insufficient to support a reasonable inference that Mclasky's use of force was excessive. The record evidence shows that Plaintiff Watkins began to struggle against Mclasky's grip as soon as the police officer apprehended Watkins. (Watkins Dep. 89:3-16, 90:22-91:1.) It was not until Plaintiff was successful in freeing himself from Mclasky's grasp that Mclasky used his weight to push Plaintiff to the ground. (Watkins Dep. 91:15-91:23, 92:14-93:11.) Mclasky did not use any other force in effectuating the arrest. (*Id.* at 101:23-104:8.) Additionally, while Mclasky was attempting to subdue Watkins, Goldberg sprayed pepper spray into Mclasky's face. (Goldberg Dep. at 133:15-134:2.) Based on these facts, Mclasky's use of force was objectively reasonable. *See e.g.*, *Tracy*, 623 F.3d at 97-98 (affirming summary judgment where plaintiff resisted arrest and

the arresting officer "was also injured, giving further credence to [the] conclusion that his use of force was both necessary and reasonable").

Additionally, the evidence in the record shows that Watkins sustained "minor scratches" on his hands and knees, (Medical Treatment of Prisoner Form at 1), and a split lip when a police officer pushed him towards a brick wall while he was handcuffed, (Watkins Dep. at 109:10-110:9). Watkins' injuries, which Plaintiffs do not allege resulted in permanent injury or scarring, are not sufficiently serious or harmful enough to give rise to a constitutional claim. *Coleman v. City of New York*, 07 CIV. 1051 (CM), 2010 WL 571986, at *5 (S.D.N.Y. Feb. 2, 2010) (granting summary judgment where "injury to plaintiff was transitory and de minimis"); *Contra Washpon*, 561 F. Supp. 2d at 407 (denying summary judgment where plaintiff required medical treatment following handcuffing and alleged permanent injury in the form of scars). Accordingly, Watkins' claim for excessive force fails on the merits.

## IV.    CONCLUSION

Defendants' motion for summary judgment, (ECF No. 48), is GRANTED. Plaintiffs' cross motion for partial summary judgment, (ECF No. 58), is DENIED. The Clerk of Court is directed to close the motions accordingly.

Dated: New York, New York
       September 30, 2021

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge